# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 14-804V
Filed: November 3, 2015
UNPUBLISHED

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
LOBELIA SHARP-ROUNTREE,              *
                                     *
              Petitioner,            *
     v.                              *
                                     *   Interim Attorneys' Fees and Costs;
SECRETARY OF HEALTH                  *   Special Processing Unit ("SPU")
AND HUMAN SERVICES,                  *
                                     *
              Respondent.            *
                                     *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Kelly Danielle Burdette*, Burkett & Burdette, Seattle, WA, for petitioner.
*Adriana Ruth Teitel*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

  On September 2, 2014, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] [the "Vaccine Act"]. Petitioner alleged that she suffered a shoulder injury (adhesive capsulitis) and brachial neuritis due to an influenza vaccination administered on April 6, 2012. (Petition at 1.) The case was assigned to the Special Processing Unit ("SPU").

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.      Procedural History**

On March 6, 2015, Petitioner filed a consented motion to substitute attorney. (ECF. No. 24.)  Mark Theodore Sadaka was terminated as counsel in this case and Kelly D. Burdette substituted in his place.  Subsequently, on June 10, 2015, Petitioner's counsel, Ms. Burdette, filed a motion for interim attorneys' fees and costs on behalf of Mr. Sadaka. (ECF No. 29.)

Mr. Sadaka's application for attorneys' fees and costs included billing for a total of $26,430.44 in fees and costs. (ECF No. 29, Ex. A, p. 1.)  However, after conferring with respondent's counsel, he reduced his request to $16, 575.00 for attorneys' fees and $3,081.44 for attorneys' costs, for a total requested award of $19,656.44. (EFC No. 29, p. 1.)  Respondent does not object to the amount requested by Mr. Sadaka. (ECF No. 29, p. 2; ECF No. 30, p. 6.)

Respondent did, however, oppose an award of interim fees in this case.  (ECF No. 30.) Respondent contended that substitution of counsel is an insufficient basis for awarding interim fees and that interim fees are not otherwise warranted at this juncture in this case. (ECF No. 30, p. 4.) Respondent also argued that as of the date of Mr. Sadaka's motion for fees and costs, a reasonable basis for petitioner's claim had not yet been established, focusing in particular on the fact that no expert report had yet been filed in the case.[3] (ECF No. 30, pp. 5-6.)  Significantly, however, respondent did not challenge the presumption that Mr. Sadaka filed this claim in good faith. (ECF No. 30, p. 5.)

Subsequently, on September 28, 2015, petitioner filed an expert report by Mary E. Reif, M.D. (ECF No. 34.)  On October 28, 2015, respondent filed a status report indicating for the first time that she is amenable to engaging in settlement negotiations. (ECF No. 35.)  Respondent stressed that petitioner's expert characterized her injury as a Shoulder Injury Related to Vaccine Administration ("SIRVA") and appeared to rule out a diagnosis of brachial neuritis. (ECF No. 35.)

---

[3] Prior to the filing of Mr. Sadaka's application for fees and costs, respondent filed a status report in which she indicated that she felt settlement negotiations would be premature based on the existing record of the case and proposing that petitioner file an expert report. (ECF No. 25.)  In her opposition to petitioner's motion, respondent further explained that she felt an expert report was necessary to establish whether petitioner's symptoms and condition fit either of her alleged injuries (i.e. brachial neuritis or adhesive capsulitis). (ECF No. 30, p. 6.) Respondent was also concerned that petitioner could not rule out involvement of a contemporaneously administered pneumococcal vaccine. (*Id*.)  At the time of respondent's opposition, petitioner had an outstanding deadline to file an expert report supporting her claim. (Scheduling Order (Non-PDF), 3/23/2015; Order (Non-PDF), 7/28/2015, Granting Motion for Enlargement.)

## II.     Discussion

### A. Awarding Interim Fees Based on Counsel's Departure from the Case

Stressing the absence of any prevailing party requirement under the Vaccine Act, the Federal Circuit has held in *Avera v. HHS* that interim awards for attorneys' fees and costs are appropriate where a special master can determine that a claim was brought in good faith and with a reasonable basis as required under the Vaccine Act. *Avera v. HHS*, 515 F.3d 1343, 1352 (Fed. Cir. 2008)(citing §300aa-15(e)(1)). The Federal Circuit noted that "a special master can often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis." (*Id.*) Nonetheless, the Circuit denied an interim award, because the appellants had not suffered "undue hardship." (*Id.*)  Subsequently, in *Shaw v. HHS*, the Federal Circuit reiterated its *Avera* standard, noting that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." *Shaw v. HHS*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).

Although noting that an award of interim attorneys' fees and costs is within the "reasonable discretion" of the special master, decisions of the Court of Federal Claims subsequently emphasized the Federal Circuit's "undue hardship" language and cautioned that the *Avera* decision did not create a presumption in favor of interim fees and costs in all cases. *See, e.g. Shaw v. HHS*, 110 Fed. Cl. 420, 423 (Fed. Cl. 2013). Nonetheless, it has also been noted that "the Federal Circuit in *Avera* and *Shaw* did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees." *Woods v. HHS*, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012).

In *McKellar v. HHS*, 101 Fed. Cl. 297 (Fed. Cl. 2011), Judge Bruggink expressed the view that "the mere fact that an attorney plans to withdraw is not *necessarily* a hardship that triggers an award of interim fees and costs." *McKellar*, 101 Fed. Cl. at 302 (emphasis added).  In the above-cited *Woods* decision, however, Judge Williams persuasively observed that withdrawal should be an important, if not deciding, factor in determining the appropriateness of an interim fee award.  Specifically Judge Williams explained that "there is no reason to force counsel, who have ended their representation, to delay receiving fees indefinitely until the matter is ultimately resolved. The special master articulated a valid concern that it was 'unknowable' whether the case would be settled, or extensively litigated to the point of determining damages.  The special master reasonably concluded that delaying a fee award to counsel who had ended their representation for an indeterminable time until the case was resolved sufficed to constitute the type of 'circumstances' to warrant an interim fee award." *Wood*, 105 Fed. Cl. at 154. In the instant case, the undersigned finds Judge Williams's reasoning to be highly persuasive.

Of course, this case has been assigned to the "SPU" for expedited processing. Such designation offers some indication that there was an expectation, at least upon filing, that the case was likely to resolve informally and relatively quickly.  Nonetheless, such an outcome is far from guaranteed even among SPU-designated cases.  To date, this case has been litigated for over one year with no reason to presume an *immediate* resolution.  Indeed, respondent only recently expressed a willingness to begin exploring

settlement in this case and negotiations have not even begun as petitioner has yet to serve her demand.  Additionally, as respondent herself noted, the early stages of this case were complicated by the fact that one of petitioner's treating physicians had died. (ECF No. 30, p. 5, fn. 5.)  Mr. Sadaka's collection of records was made difficult by this circumstance and it did serve to slow progress in the case.[4]

Moreover, petitioner's former counsel, Mr. Sadaka, is a solo practitioner.  As special masters have previously observed, for those in small firms with limited resources "[i]t cannot be seriously argued that in essence loaning cases thousands of dollars for years is not a hardship." *Kirk v. HHS*, No. 08-241v, 2009 WL 775396, *2 (Fed. Cl. Spec. Mstr. March 13, 2009); *Edmonds v. HHS*, No. 04-87v, 2012 WL 1229149, *9 (Fed. Cl. Spec. Mstr. March 22, 2012)(quoting *Kirk v. HHS*).

For these reasons, the undersigned finds that under the instant circumstances, an award of interim fees is warranted provided that the case was brought in good faith and with a reasonable basis.

### B. Determining Whether the Claim was Brought in Good Faith

Whether a claim is brought in "good faith" is a subjective determination, long understood as requiring an "honest belief" that a claim is appropriate for compensation. *See, e.g. Chronister v. HHS*, No. 89-41v, 1990 WL 293438, *1 (Fed. Cl. Spec. Mstr. December 4, 1990). The standard for finding good faith has been described as "very low" and findings that a petition lacked good faith are rare. *Heath v. HHS*, No. 08-86v, 2011 WL 4433646, *2 (Fed Cl. Spec. Mstr. August 25, 2011). In fact, it has been said that petitioners are entitled to a presumption of good faith absent direct evidence of bad faith. *Grice v. HHS*, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

Here, there is nothing in the record that remotely suggests any hint of bad faith. Moreover, respondent herself, despite contending that a reasonable basis for this claim had not yet been established, nonetheless declined to challenge Mr. Sadaka's good faith basis for filing this claim. (ECF No. 30, p. 5.)  Therefore, I find that this claim was brought in good faith.

### C. Determining Whether the Claim has a Reasonable Basis

Whereas "good faith" is a subjective standard with the benefit of a presumption, the question of whether a claim has a "reasonable basis" is objective, and must be affirmatively established by the petitioner. *McKellar*, 101 Fed. Cl. at 305.  The claim of a "reasonable basis" must be supported by more than "unsupported speculation." *Perreira v. HHS*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Rather, to have a reasonable basis, a claim must be supported, at a minimum, by medical records or medical opinion. *Chronister*, 1990 WL 293438 at *1.

When petitioner's claim is supported by a qualified and independent medical expert opinion, such opinion is "normally" sufficient to show a reasonable basis. *O'Dell*

---

[4] While this case has certainly not been "protracted" by historical standards, it is one of the oldest SPU cases to remain unresolved.

*v. HHS*, No. 89-42v, 1991 WL 123581, *3 (Fed. Cl. Spec. Mstr. June 19, 1991). Although some expert opinions may be patently insufficient, this may still be true even where the expert ultimately proves unpersuasive. *Heath v. HHS*, No. 08-86v, 2011 WL 4433646 (Fed. Cl. Spec Mstr. August 25, 2011).

In this case, petitioner's expert report succeeds in establishing that petitioner's claim, at least to date, has a reasonable basis to proceed.  (Ex. 18.) Dr. Reif, a board-certified neurologist appears qualified to opine in this case.  (Ex. 17.) Moreover, her independence and candor is well-established in that she opined that only one of the two injuries alleged by petitioner was supported by adequate evidence. (*See, e.g.* Ex. 18, p. 1.) And finally, it is apparent that Dr. Reif undertook an extensive review of petitioner's medical records and thoroughly accounted for the facts of this case. (*See*, Ex. 18, *generally*.) Significantly, respondent's opposition to interim fees was filed prior to the filing of petitioner's expert report.  In that regard, the undersigned's review of Dr. Reif's report suggests that the report sufficiently addresses the specific concerns raised by respondent's opposition.[5] (*See* ECF No. 30, p. 6.)

### III.    Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300 aa-15(e).  Based on the reasonableness of petitioner's request and the lack of any objection by respondent as to the amount of the award, the undersigned **GRANTS** the request for approval and payment of interim attorneys' fees and costs.

**Accordingly, the undersigned awards the total of $19,656.44[6] as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Mark T. Sadaka, Esq.**

---

[5] Respondent's opposition did raise the point that petitioner received a pneumococcal vaccine (a non-covered vaccine) in the same arm at the same time as the allegedly causal influenza vaccine. (ECF No. 30, p. 6.)  Dr. Reif's report is silent on that point. (Ex. 18.)  That issue alone, however, would not prevent petitioner from demonstrating a reasonable basis for her claim as it is not necessarily a part of petitioner's *prima facie* burden.  *See, e.g. Walther v. HHS*, 485 F.3d 1146, 1150 (Fed. Cir. 2007)(stating that "our legal system rarely requires a party to prove a negative. A plain reading of the statutory text more naturally places the burden on the government to establish that there is an alternative cause by a preponderance of the evidence.") Moreover, if that were the sole issue in the case, it is possible, if not likely, that the evidence on causation would be in equipoise, resulting in a ruling favoring petitioner. *See, e.g. Doe v. HHS*, 83 Fed. Cl. 157, 169 (Fed. Cl. 2008)(noting that "if the record evidence is in equipoise on any requisite element of proof, the party bearing the burden of proof with respect to such element cannot prevail because it has not marshaled a preponderance of evidence in its favor.")

[6] This award encompasses all charges by Mr. Sadaka, "advanced costs" as well as fees for legal services rendered.  Furthermore, 42 U.S.C. § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. HHS*, 924 F.2d 1029 (Fed. Cir.1991).

The clerk of the court shall enter judgment in accordance herewith.[7]

**IT IS SO ORDERED.**

                                                **s/Nora Beth Dorsey**
                                                Nora Beth Dorsey
                                                Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.